```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

UNITED STATES OF AMERICA,      :

      - v -                    :       07 Cr. 973(KPC)

MAURICE COTTMAN,               :

            Defendant.         :
------------------------------X
```

## DEFENDANT MAURICE COTTMAN'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE
## BASED UPON AN ILLEGAL SEARCH AND SEIZURE

                                        LEONARD F. JOY, ESQ.
                                        Federal Defenders of New York, Inc.
                                        Attorney for Defendant **Maurice Cottman**
                                        52 Duane Street, 10th Floor
                                        New York, New York 10007

**PHILIP L. WEINSTEIN, ESQ.**
<u>Of</u> <u>Counsel</u>

TO:
    **MICHAEL J. GARCIA, ESQ.**
    United States Attorney
    Southern District of New York
    One St. Andrew's Plaza
    New York, New York 10007
    Attn: **ADAM S. HICKEY, ESQ.**
         Assistant United States Attorney

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,      :

    - v -                      :       07 Cr. 973(KPC)

MAURICE COTTMAN,               :

              Defendant.       :
------------------------------X
```

**DEFENDANT MAURICE COTTMAN'S MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE BASED UPON AN ILLEGAL SEARCH AND SEIZURE**

The defendant, Maurice Cottman, hereby moves under the Federal Rules of Criminal Procedure 12(b)(3) and 41(f) to suppress evidence obtained from him as the result of an illegal search and seizure conducted by the New York Police Department ("NYPD") on September 9, 2007. In particular, Mr. Cottman moves to suppress a gun and ammunition that was seized from the apartment in which he was living following an illegal entry, search and seizure. Additionally, we move to suppress a post-arrest statement in which Cottman acknowledged that it was his gun.

**Background**

Mr. Cottman is charged in a one-count indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). The charge against Mr. Cottman is based on a 12-gauge shotgun and shells that was recovered from an apartment in which he was living on September 9, 2007.

- 1 -

**Government's Account**

According to the sworn statement of New York City Police Officer Deleon, on September 9, 2007, at about 5:00 a.m., officers responded to a 911 call concerning a domestic dispute at 415 East 157th Street in the Bronx. Complaint attached as Exhibit A. The caller identified a woman in a dispute with her boyfriend. According to the caller, who was driving on the FDR, from Brooklyn, and identified himself as the brother of the woman, when he telephoned his sister's he heard her yell and scream on the phone. He described the boyfriend as wearing brown shirt and blue jeans shorts. When asked if the boyfriend had a firearm, the caller responded that the boyfriend was known to have a firearm. The dispatcher reported to the patrol car as a "possible weapon." Attached as Exhibit B; CD of 911 call also available.

Upon arriving at 415 East 157th Street, the officers saw a woman whose lip was bleeding. She said the man who had assaulted her entered her apartment. When Cottman opened the door in response to the officers' knocking, the officers immediately pulled him out of the apartment into the hallway. The officers entered the apartment to determine if anyone else was present. Upon looking into the bedroom, an officer saw a box of ammunition on the bureau. The officers left the apartment.

"PO-1" asked the woman whether Cottman had a firearm. She said she did not know and was unaware of any firearm in the

apartment.  However, she also said he was known to have a weapon. When asked, she consented to a search of the apartment.

The officers returned to the apartment and under the mattress in the bedroom found a shotgun.  In a subsequent statement, Cottman admitted it was his gun.  Statement attached as Exhibit C.

**Defense account**

Claudia Clark had been living with Cottman in September 2007 and he kept clothing and other property the apartment.  He had a set of keys to the apartment door, but not to the outside door. During the early morning of September 9th, 2007, she was driven home by a male friend.  Cottman was waiting outside.  They argued and entered the building together.

Inside the building, Cottman hit her and entered the apartment.  When the police arrived and asked what she wanted them to do, Clark said she did not want to press charges.  Rather, she only wanted him out of the apartment and the return of her keys.

Subsequently, an officer told her that a gun was found in her apartment.  In response to a question, she said she was unaware of its presence.  She never consented to a police entry into the apartment.  See Clark declaration.

Mr. Cottman's declaration contains a similar version of the events.  In addition, he said he had not given the officers permission to enter.  And, although the box of ammunition was on the bureau, it was covered by several shirts. See Cottman

- 3 -

declaration.

**<u>Legal Argument</u>**

Absent consent or exigent circumstances, the police may not make a warrantless entry into a home and a warrantless entry is presumed unreasonable. <u>Payton v. New York</u>, 445 U.S. 573 (1990). That is so because entry into the home is the "chief evil" against which the Fourth Amendment is directed. <u>United States v. District Court for the Eastern District of Mich. S. Div.</u>, 407 U.S. 297 (1972). When an arrest is made in-the-home, under appropriate circumstances a security sweep incident to the arrest is permissible. <u>See</u> <u>Maryland v. Buié</u>, 494 U.S. 325, 334 (1990). When there is an arrest outside of the home, however, a security sweep inside the home requires that the arresting officer:

> ...had (1) a reasonable belief third persons [were] inside and (2) a reasonable belief that the third persons [were] aware of the arrest outside the premises so that they might destroy evidence, escape or jeopardize the safety of the officers or public.

<u>United States v. Oguns</u>, 921 F.2d 442, 446 (2d Cir. 1990) citing text of <u>United States v. Vasquez</u>, 638 F.2d 507, 531 (2d Cir. 1980).

Moreover, once the security sweep is concluded, the officers must leave and not reenter without a warrant. <u>United States v. Isiofia</u>, 3709 F.3d 226, 234 (2d Cir. 2007). <u>Cf.</u> <u>Mincey v. Arizona</u>, 437 U.S. 384 (1978)(absent a warrant, search of a home that was the scene of a murder was unconstitutional after the defendant's

- 4 -

arrest.[1]

**Application**

Measured by these standards the search of the apartment was unconstitutional. Based on facts contained in the sworn complaint, the officers were not initially permitted to enter the apartment. First, there was no warrant. Second, there was no consent. Last, there was no exigency. The victim of the assault was outside the apartment with police officers and requested only that Cottman be removed . Once Cottman was pulled outside the apartment, there was no potential danger to the officers, despite the report of a possible firearm. He was in police custody. Thus, there was no potential danger that needed to be addressed without delay.

Nor was the entry a justifiable security sweep. No information or evidence existed that anyone else was inside the apartment. And, the presence of someone else was especially unlikely in a domestic dispute. The only information the police had upon entry was that a man was arguing with his girlfriend and after hitting her had entered the apartment. Once Cottman was arrested, unlikely that anyone else was in the apartment or that there was a potential danger to the police or public. See Welsh v.

---

[1] When a guest has permission to use an apartment and is given a key, the guest has an expectation of privacy in the apartment. Minnesota v. Olson, 495 U.S. 91, 99 (1990). Cottman had been living with Clark in the apartment, kept clothes and other property inside it and had his own key. Thus, he unquestionably had an expectation of privacy in the apartment.

Wisconsin, 466 U.S. 740, 750-53 (1984) (warrantless entry into home to seize person suspected of DUI unreasonable even if evidence of intoxication might dissipate since gravity of an offense is an important factor in assessing exigency); United States v. Colbert, 76 F.3d 773, 777 (6th Cir. 1996) (arrestee's dangerousness is irrelevant to protective sweep analysis once the arrestee is in custody); United States v. Romy, 1997 WL 1048901 (E.D.N.Y.) (Gleeson, J.) (protective sweep not justified when officers have no articulable reasons for believing that an unseen third party may pose a danger). Moreover it is unlikely that any evidence of a domestic dispute was inside the apartment and subject to destruction.

Even if the initial entry was proper, the reentry was not. According to the Government's version of events, Ms. Clark only consented to the reentry, after the ammunition box was found. But, in her sworn declaration Clark specifically denies consenting to the entry into her apartment. She was never asked for permission after telling the officers she only wanted Cottman removed from the apartment. She next spoke to the officers after the gun already had been found. Despite the claim in the complaint, there was no consent to reenter. At best, there is a factual dispute.

As for the ammunition box being in plain view, Cottman's declaration disputes that claim. He had shirts over it.

- 6 -

In sum, the initial entry was illegal. Even if the ammunition box was in plain view, it cannot provide a basis for subsequent conduct because it was tainted by the initial illegal entry. With respect to the second entry, the factual predicate potentially justifying it are, at best, in dispute.

Finally, the Cottman's statement given shortly after his arrest was tainted by the illegal search and seizure. <u>Brown v. Illinois</u>, 422 U.S. 590, 603-04 (1975); <u>United States v. Hagg</u>, 278 F.3d 44, 45-46 (2d Cir. 2003). It, too, should be suppressed.

## Conclusion

For the foregoing reasons the shotgun, ammunition and shell should be suppressed or in the alternative a hearing ordered.

Dated:  New York, New York
        November 6, 2007

>                       Respectfully submitted,
>
>                       LEONARD F. JOY, ESQ.
>                       Federal Defenders of New York, Inc.
>
>
>                   By: _____
>                       PHILIP L. WEINSTEIN, ESQ.
>                       Attorney for Defendant **Maurice Cottman**
>                       52 Duane Street, 10th Floor
>                       New York, New York 10007

TO:
    **MICHAEL J. GARCIA, ESQ.**
    United States Attorney
    Southern District of New York
    One St. Andrew's Plaza
    New York, New York 10007
    Attn:  **ADAM S. HICKEY, ESQ.**
        Assistant United States Attorney