

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 20, 2007

**BY HAND**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: **United States v. Maurice Cottman,**
   **07 Cr. 973 (PKC)**

Dear Judge Castel:

   The Government respectfully submits the following in response to defendant Maurice Cottmans's motion to suppress his statements and physical evidence recovered by officers of the New York City Police Department ("NYPD") in connection with the defendant's arrest on September 9, 2007, for, among other things, assault and possession of a firearm. A hearing is presently scheduled for December 14, 2007 at 11:15 a.m.

**Factual Background**

   The defendant was charged in a one-count Complaint with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1), *see United States* v. *Cottman*, 07 Mag. 1612, and was subsequently indicted in the above-captioned case for the same offense.

   The Government anticipates that the evidence at the hearing will show the following: On September 9, 2007, at about 5 a.m., officers from the NYPD responded to a report of an assault in progress at 415 East 157th Street, Apartment 2B (the "Apartment"), involving a male assailant and a female victim. The NYPD dispatcher informed officers responding to the scene that a weapon or gun may have been involved. (Compl. ¶ 2(a)-(b)).

   When officers responded, they first encountered the victim of the assault, Claudia Clark, on the ground floor, and then they proceeded upstairs to the Apartment. They seized the defendant when he opened the door to the Apartment, pulled him outside, and then quickly looked around the small Apartment. During that brief search, an officer saw a box for

Hon. P. Kevin Castel
November 20, 2007
Page 2 of 6

ammunition in plain view in the bedroom, which prompted him to return downstairs, to ask Ms. Clark for permission to search her apartment, which she gave.  The officer returned upstairs and found, under a mattress, the loaded shotgun that belonged to the defendant.  (Declaration of Maurice Cottman dated November 6, 2007, ¶ 10 [hereinafter "Cottman Decl."]; Compl. ¶ (2(b)-(f)).

In many respects, the defendant's submissions are consistent with this account of his arrest.  The defendant denies, however, that a box of ammunition was in plain view, because he had covered it with shirts, Cottman Decl. ¶ 10, and Ms. Clark denies she was ever asked for (much less gave) consent to search her apartment, Declaration of Claudia Clark dated November 1, 2007, ¶ 11 [hereinafter "Clark Decl."].

The Government agrees that an evidentiary hearing is required in light of those contentions.  In response to the issues raised by the defendant in his submission, and in light of the anticipated testimony, the Government respectfully offers the following summary of applicable legal principles, but reserves the right to request post-hearing briefing regarding the factual and legal issues that arise during the hearing, if necessary.

## Applicable Legal Principles

A.     **In the Interest of Their Own Safety, Police Are Permitted To Make a Limited Search of a Home Following an Arrest**

In *Maryland* v. *Buie*, the Supreme Court identified two kinds of warrantless searches the police may conduct incident to a lawful arrest inside a home. 494 U.S. 325, 334-35 (1990).  *First*, "as a precautionary matter and without probable cause or reasonable suspicion, [the police may] look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id*. at 334.  Such a search is "automatically justified" because of "the risks inherent in taking an individual into custody." *United States* v. *Moran Vargas*, 376 F.3d 112, 115 (2d Cir. 2004); *see also United States* v. *Buie*, 494 U.S. at 333-34 (explaining that officers have an "interest . . . in taking steps to assure themselves that the house . . . is not harboring other persons who are dangerous and who could unexpectedly launch an attack" which is "sufficient to outweigh the intrusion such procedures may entail").

*Second*, where there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing" that there is within the home "an individual posing a danger to those on the arrest scene," the officers may conduct a protective sweep of the home looking wherever such a person might be hiding. *Buie*, 494 U.S. at 334-35.  Such a search is permissible even when the defendant is arrested just outside the residence. *See United States* v. *Oguns*, 921 F.2d 442, 446-47 (2d Cir. 1990); *see also United*

Hon. P. Kevin Castel
November 20, 2007
Page 3 of 6

*States* v. *Hawkins*, 59 F.3d 723, 728 (8th Cir. 1995), *vacated on other grounds* 516 U.S. 1168 (1996); *United States* v. *Henry*, 48 F.3d 1282, 1284 (D.C. Cir. 1995).

Although the defendant characterizes his arrest as occurring outside the apartment, there is no apparent dispute that he opened the door in response to demands by the police that he do so, and that when he opened the door to the hallway, he remained standing inside the apartment, and officers outside the apartment reached into the apartment, across its threshold, seized him, and drew him outside. (Cottman Decl. ¶ 8). He was arrested at the point that physical force was applied to him, and a reasonable person in his position would not have felt free to leave, *see California* v. *Hodari D.*, 499 U.S. 621, 626 (1991); *I.N.S.* v. *Delgado*, 466 U.S. 210, 215(1984), which was within the apartment (regardless of where the formalities of the arrest, such as *Miranda* warnings, later took place), *see Payton* v. *New York*, 445 U.S. 573, 590 (1980) ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house."); *Loria* v. *Gorman*, 306 F.3d 1271, 1276-77, 1284, 1286 (2d Cir. 2002) (holding that an individual was arrested within his home when officers crossed the threshold to seize him and bring him outside); *United States* v. *Crespo*, 834 F.2d 267, 269-70 (2d Cir. 1987) (holding that, absent exigent circumstances, a warrant would be required to arrest a defendant who opened the door halfway in response to officers knocking and kicking the door); *United States* v. *Reed*, 572 F.2d 412, 416, 422-23 (2d Cir. 1978) (holding that if the defendant answered a knock on the door and was standing inside her home when police told her she was under arrest, "she was arrested inside her home").

Based on Ms. Clark's statements to the police that the defendant hit her, the police had probable cause to arrest the defendant for assault. (Clark Decl. ¶ 7). They were permitted to effect that arrest within the Apartment but without a warrant because it was her apartment, and she specifically consented to their entry for the purpose of seizing the defendant and removing him. *See* Clark Decl. ¶ 10;[1] *Georgia* v. *Randolph*, 547 U.S. 103, 117-19 (2006); *United States* v. *Matlock*, 415 U.S. 164 (1974); *United States* v. *Davis*, 967 F.2d 84, 87 (2d Cir. 1992). Further,

---

[1]    Ms. Clark contradicts herself somewhat in her declaration, because she states she told officers that, on the one hand, she "wanted Mr. Cottman out of the apartment and also wanted my keys back," but, on the other hand, that she never "g[a]ve the offices permission to enter . . . my apartment." (Clark Decl. ¶¶ 10-11). The officers were allowed to enter the Apartment to search for and seize the defendant if they had an objectively reasonable basis for thinking Ms. Clark consented to their entry for that purpose and that she had the authority to give that consent. *Florida* v. *Jimeno*, 500 U.S. 248, 251 (1991); *Illinois* v. *Rodriguez*, 497 U.S. 177, 186-88 (1990); *United States* v. *Garcia*, 56 F.3d 418, 423 (2d Cir. 1995). Under the undisputed circumstances, a reasonable police officer would have understood that Ms. Clark was asking the police (and certainly consenting to them) to cross the threshold to remove the defendant from her apartment. And once the defendant was seized, the police had the lawful authority to arrest him, regardless of any stated preference by Ms. Clark to the contrary.

given that Ms. Clark was injured, and her assailant had fled to her apartment, where he initially ignored police demands that he open the door (Cottman Decl. ¶ 7), and, as far as officers knew, he had a weapon and could return to do her (or others) further harm, exigent circumstances could have justified an arrest in her home as well. *See Tierney* v. *Davidson*, 133 F.3d 189, 197-99 (2d Cir. 1998); *United States* v. *MacDonald*, 916 F.2d 766 (2d Cir. 1990).

Because the defendant was arrested just inside the threshold of the apartment, officers were "automatically justified" in quickly surveying the area "'immediately adjoining'" the entryway to the apartment for other individuals, to determine whether anyone posed a danger to them while they were in the hallway. *United States* v. *Moran Vargas*, 376 F.3d at 115 (quoting *Buie,* 494 U.S. at 334). "The small size of [an] apartment" is relevant to determining what "immediately adjoins" the place of arrest, and courts have repeatedly upheld searches of bedrooms and other rooms adjacent to the room where the defendant was seized. *United States* v. *Lauter*, 57 F.3d 212, 213-14, 216-17 (2d Cir. 1995) (upholding sweep of adjoining bedroom after defendant was arrested in the first room of the apartment); *see also United States* v. *Thomas*, 429 F.3d 282, 287-88 (D.C. Cir. 2005) (upholding search of bedroom 15 feet from entrance to apartment, where defendant was arrested); *In re Sealed Case 96-3167*, 153 F.3d 759, 770 (D.C. Cir. 1998); *United States* v. *Medina*, 301 F. Supp. 2d 322, 332-33 (S.D.N.Y. 2004); *United States* v. *Sanchez*, No. 98 CR. 1480 (DLC), 1999 WL 138924, at *1-*2 (S.D.N.Y. 1999). *Cf. United States* v. *Hernandez*, 941 F.2d 133, 135 (2d Cir. 1991) (upholding protective sweep of bedroom immediately upon officers' entry into the apartment, when defendant was arrested separately in the living room).

This is not a case where the room in question was swept in the absence of an arrest, *United States* v. *Gandia*, 424 F.3d 255, (2d Cir. 2005); *Moran Vargas*, 376 F.3d at 115, or of a more thorough search of a room, "all of which was visible at a glance," *United States* v. *Blue*, 78 F.3d 56, 58 (2d Cir. 1996). And whether officers were entitled to perform the quick sweep of the apartment for their own safety should not depend on the split second decision to pull the defendant a few feet out of the apartment, instead of pushing him a few feet into it, when either decision would have been appropriate under the circumstances, and the danger to officers from whatever "immediately adjoin[ed]" the entrance to the apartment was just as great in either location.

Regardless of whether the entry of the apartment qualifies as the first or the second type of sweep contemplated by *Buie*, if an officer was lawfully standing where he could see into the bedroom, he was permitted to seize a box of ammunition if it was in "plain view." *See Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993) ("Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant."); *United States* v. *Medina*, 944 F.2d 60, 69 (2d Cir. 1991) (during protective sweep inside apartment, agents properly seized pistol lying in a partially opened gun

Hon. P. Kevin Castel
November 20, 2007
Page 5 of 6

case in bedroom because it was in plain view); *United States* v. *Jackson*, 778 F.2d 933, 937 (2d Cir. 1985) (objects coming into plain view during a security check can be properly seized); *United States* v. *Gomez*, 633 F.2d 999, 1008 (2d Cir. 1980) (same).

**B.     Subsequent Voluntary Consent to Search a Home Can Cure Any Defect in a Prior Entry of the Home**

Even if the initial entry of the apartment was impermissible, when Ms. Clark subsequently and voluntarily consented to the search of her apartment, that consent was sufficient to dissipate any taint from the initial entry, and, accordingly, the fruits of the consent search are admissible. *United States* v. *Snype*, 441 F.3d 119, 132 (2d Cir. 2006) (quoting *United States* v. *Oguns*, 921 F.2d at 447); *see Wong Sun* v. *United States*, 371 U.S. 471, 487-88, 491 (1963). In evaluating whether consent is sufficiently attenuated from any prior illegality, the Supreme Court has suggested four factors: (1) whether *Miranda* warnings were given, (2) the "temporal proximity" of the illegal entry and the alleged consent, (3) "the presence of intervening circumstances," and (4) "the purpose and flagrancy of the official misconduct." *Brown* v. *Illinois*, 422 U.S. 590, 603-04 (1975). The first factor is inapposite here, since Ms. Clark was not in custody. *United States* v. *Snype*, 441 F.3d at 134.

In *Snype*, police forcibly entered the apartment of a third-party to arrest the defendant with a warrant. 441 F.3d at 126-27. Shortly after removing him from the apartment, the police sought the third-party's consent to search her apartment, which she gave. *Id.* The Second Circuit assumed that the initial entry into the apartment to arrest the defendant was illegal (because there was insufficient record evidence that the police had reason to believe the defendant was in her apartment), but it upheld the subsequent search, because the taint of the illegal entry was purged by that consent, which was sufficiently attenuated from the entry. *Id.* at 134-35. The court relied on the facts that the defendant had been removed from the apartment at that point, and that the woman who was consenting had her "own liberty . . . restored" because the SWAT team that forced the entry had left the apartment. *Id.* at 135. The court also found that the police had a legitimate purpose in entering her apartment in the first place (to arrest the defendant), and even if they engaged in misconduct, it could not be called "flagrant." *Id.* at 135; *see also United States* v. *Richard*, 994 F.2d 244, 252 (5th Cir. 1993) (subsequent consent by a third party cured the taint of an earlier, illegal arrest outside her presence). Prior taint can be dissipated even where information obtained through an illegal search is what motivates the officer to seek consent. *See United States* v. *Liss*, 103 F.3d 617, 621 (7th Cir. 1997) (holding that it was irrelevant that police were motivated to seek consent based on evidence they saw during an illegal search).

The Government respectfully submits that because Ms. Clark consented to the search of her home, and because the loaded shotgun was found during that search, the shotgun should not be suppressed, even if the officers' initial sweep of the apartment was illegal.

Hon. P. Kevin Castel
November 20, 2007
Page 6 of 6

## CONCLUSION

Based on the foregoing authority, after hearing the live testimony of the Government witnesses, the defendant's motion should be denied in its entirety.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:                      
Adam S. Hickey
Assistant United States Attorney
Southern District of New York
Tel.: (212) 637-1039

cc:      Philip L. Weinstein, Esq.